UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDITH BARTEE,                                     Case No. 16-10083

        Plaintiff,                         Gershwin A. Drain
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Stephanie Dawkins Davis
                                                  United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 15, 16)**

## I.  PROCEDURAL HISTORY

    A.  Proceedings in this Court

On January 12, 2016, plaintiff Edith Bartee, filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gershwin A. Drain referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 15, 16).

    B.  Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on October

29, 2013, alleging a disability beginning September 26, 2011. (Dkt. 13-5, Pg ID 215-216). The claim was initially denied by the state agency responsible for making disability determinations on behalf of the Commissioner on February 20, 2014. (Dkt. 13-3, Pg ID 133-145). Plaintiff requested a hearing and on April 30, 2015, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Hope G. Grunberg, who considered the case de novo. (Dkt. 13-2, Pg ID 73-129). In a decision dated May 18, 2015, the ALJ found that plaintiff was not disabled. *Id*. at 54-68. Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 12, 2015, denied plaintiff's request for review. *Id*. at 40-45; *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, that defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, and that the findings of the Commissioner be **REVERSED IN PART AND REMANDED** for proceedings in accordance with this report and recommendation.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born on November 23, 1965, and was 45 years old as of her

alleged disability onset date, and 48 years old at the time of the administrative hearing.  (Dkt. 13-2, Pg ID 67).  Plaintiff has past relevant work experience as a planner, account manager, bartender, assistant, manager, office manager, automotive maintenance scheduler, repair service clerk, maintenance inspector, tool crib attendant, palletizer[1], and service clerk.  (*Id.* at 66.)  Plaintiff's most recent full-time job was as a planner/scheduler at an automotive business from March 2007 through March 2010 (Dkt. 13-6, Pg ID 236) a job that required her to lift up to 50 pounds of automotive parts several times weekly (Dkt. 13-6, Pg ID 263-264) and walk approximately five miles throughout the workplace, according to the pedometer that she wore.  (Dkt. 13-7, Pg ID 354).  Plaintiff indicated that she stopped working there because the business ceased operations.  (Dkt. 13-6, Pg ID 235).  Plaintiff completed an associate's degree in applied science in 2012, during the alleged disability period, and is able to communicate in English.  (Dkt. 13-2, Pg ID 81-82).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since September 26, 2011, the alleged onset date.  (*Id.* at 56).  At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc

---

[1]   A palletizer or palletiser is a machine which provides automatic means for stacking cases of goods or products onto a pallet. Wikipedia, (January 12, 2017), https://en.wikipedia.org/wiki/Palletizer.

disease with cervical and mild lumbar radiculopathy, left sided carpal tunnel syndrome, early rheumatoid arthritis, major depressive disorder, bipolar disorder, generalized anxiety disorder, and posttraumatic stress disorder. (*Id.*) The ALJ then concluded that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.* at 57). As such, the ALJ found that the claimant has the residual functional capacity ("RFC") to perform:

> less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant: can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk up to six hours and sit six hours in an eight-hour workday; can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs; may not climb ladders, ropes, or scaffolds; should avoid unprotected heights; can occasionally lift overhead and frequently handle and finger with the bilateral upper extremities; should be limited to no turning of the head to the extreme ranges of motion, but activities requiring such movement can be accommodated by turning of the torso; is limited to understanding, remembering and carrying out simple, routine, and repetitive tasks, but the pace of productivity should not [be] dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt; may make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from date to day with few expected changes; and may have occasional interactions with the public, co-workers, and supervisors.

(*Id.* at 60). The ALJ next determined that claimant could not perform any of her

past relevant work. (*Id*. at 66). The ALJ concluded that considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id*. at 67). As such, the ALJ concluded that plaintiff has not been under a disability from September 26, 2011, through the date of her decision. (*Id*. at 68).

   B.   <u>Plaintiff's Motion for Summary Judgment</u>

   Plaintiff first argues that the ALJ did not give controlling weight to the objective medical evidence. Plaintiff's primary claim of error in this regard is that the ALJ rejected the opinion of her treating physician, Dr. Judy Macy, a physical medicine and rehabilitation specialist (PM&R). Plaintiff argues that the record evidence establishes that Dr. Macy's medical opinion is grounded on plaintiff's history of physical medical impairments. Plaintiff claims that the ALJ failed to properly examine the medical evidence and Dr. Macy's medical opinion which concludes that plaintiff cannot stand for more than 15 minutes at one time; sit for 15 minutes at one time; lift five pounds occasionally and frequently; never bend, stoop or balance; occasionally raise right and left arm over shoulder; would need to occasionally elevate her legs; and suffers form severe pain. (Dkt. 13-7, Pg ID 603-604). Instead, the ALJ impermissibly relied on Drs. Geffrand's and Black's medical opinions, who were not treating sources, nor were they examining physicians. Rather, both Drs. Geffrand and Black were paid for by the insurance

company to deny plaintiff's claim for benefits and hardly can be considered neutral sources.

In discounting Dr. Macy's opinion, plaintiff also argues that the regulations require that the ALJ must give good reasons for the weight given to the treating source's opinion, and because the ALJ did not provide any good reasons for discounting the opinion of Dr. Macy, even if the decision is otherwise supported by susbstantial evidence, a remand is required. *Wilson v Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) *(*citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Further, the ALJ did not evaluate as required by SSR 96-8p whether based on plaintiff's combined limitations she is capable of a competitive work schedule, i.e., an eight hour day, 40 hour work week.

Plaintiff's second major argument is that the ALJ failed to properly evaluate whether plaintiff meets and/or equals Listing 1.04A (Disorders of the Spine). Plaintiff argues that the medical evidence clearly demonstrates that she meets Listing 1.04A and that the ALJ failed to make a reasoned explanation as to why she did not meet the Listing.

C.     The Commissioner's Motion for Summary Judgment

The Commissioner first argues that plaintiff's impairments do not meet or equal Listing 1.04A (Disorders of the Spine). The Commissioner contends that the ALJ's decision in this regard was supported by substantial evidence. Namely,

state agency reviewing physician Dr. Sonia Ramirez-Jacobs opined in February

2014 that plaintiff retains the RFC to perform a range of light work despite her

severe spinal impairment(s).  (Dkt. 13-3, Pg ID 139-145).  The Commissioner

notes that although the ALJ did not mention Dr. Ramirez-Jacobs' opinion, the

court is able to look to any evidence in the record regardless of whether the ALJ

cited it.  *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

The Commissioner contends that according to SSR 96-6p, 1996 WL 374180, *3,

Dr. Ramirez-Jacobs' signature on the disability determination form establishes that

the expert considered whether plaintiff satisfied the listing.  Moreover, the fact

that Dr. Ramirez-Jacobs offered an RFC opinion suggests that she had first

determined that plaintiff's limitations did not meet or equal a listing.  Such an

expert opinion constitutes substantial evidence that a claimant's condition does

not satisfy a listing.  *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078,

1083 (6th Cir. 1987).  The Commissioner also argues that plaintiff fails to carry

her burden of showing that her condition meets or equals Listing 1.04A by

pointing to specific evidence that demonstrates that she reasonably could meet or

equal every requirement of the Listing.  The Commissioner argues that even if

plaintiff had raised a substantial question that her condition met or equaled the

Listing, thereby triggering a requirement that the ALJ must discuss the Listing, she

would still be mistaken in asserting that the ALJ was required to recite each

subsisting of Listing 1.04A by name. The Commissioner contends that the ALJ was not required to list the sublistings because the ALJ adequately considered the requirements of those sublistings in her opinion.

The Commissioner also argues that substantial evidence supports the ALJ's weighing of the evidence in the context of making the physical RFC determination that plaintiff can perform a limited range of light work. The Commissioner notes that the opinion of a state reviewing physician can outweigh a treating physician opinion where, as here, Dr. Ramirez-Jacob's opinion is supported by evidence in the case record. The ALJ also reasonably relied on the fact that plaintiff's treatment has been conservative, a characterization that plaintiff does not challenge. Plaintiff also does not challenge the ALJ's finding that her ability to babysit her "special needs" granddaughter and complete her associate's degree during the alleged disability period detracted from her disability allegations.

The Commissioner also points out that the RFC determination is supported by the October 2012 report of consultative examining physician Dr. Geffrard. Though plaintiff attempts to discredit Dr. Geffrard as being paid to deny plaintiff's claim for benefits, the Commissioner contends that plaintiff has failed to make a minimal factual showing of bias such that Dr. Geffrard's report cannot be relied upon.

The Commissioner argues that the ALJ permissibly discounted the October

8

2013 opinion of treating physician, Dr. Macy.  The Commissioner contends that the ALJ adequately summarized the test results and plaintiff does not attempt to demonstrate that any portion of this analysis was faulty.  Further, Dr. Ramirez-Jacobs reviewed much of the same evidence and arrived at an opinion less favorable to plaintiff's disability claim than the ALJ's ultimate physical RFC determination.  The fact that the ALJ did not note that Dr. Macy was a physical medicine and rehabilitation specialist is not outcome determinative as a physician's specialty is only one factor relevant to the weighing of a physician's opinion under 20 C.F.R. § 404.1527(c)(1)-(6).  Dr. Macy's specialty is even less compelling given that consultative physician, Dr. Geffrard, had the same specialty and opined that plaintiff could engage in all of her basic and advanced activities of daily living, an opinion to which the ALJ gave great weight.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If no

relief is obtained during this administrative review process, the claimant may file

an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the

ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for

the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247

(6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)

(an "ALJ is not required to accept a claimant's subjective complaints and may . . .

consider the credibility of a claimant when making a determination of disability.");

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's

credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

11

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

14

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Legal Analysis

1.   Listing 1.04A

Plaintiff complains that the ALJ's Step 3 analysis is flawed. Specifically, plaintiff argues that the ALJ failed to evaluate the medical evidence to determine whether plaintiff meets and/or equals Listing 1.04A. The ALJ's Step 3 finding regarding Listing 1.04A consists of the following statement:

> The limitations of the claimant do not satisfy the terms of Listing 1.04 for disorders of the spine. The claimant is not so functionally limited and the evidence does not support the medical findings required by Listing 1.04 such as a condition that results in compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in

15

> pseudoclaudication established by findings on
> appropriate medically acceptable imaging and
> manifested by chronic pain and weakness.

(Dkt. 13-2, Pg ID 57).

Under the theory of presumptive disability, a claimant is eligible for benefits

if he or she has an impairment that meets or medically equals a Listed Impairment.

*See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich.

June 18, 2012).  When considering presumptive disability at Step Three, "an ALJ

must analyze the claimant's impairments in relation to the Listed Impairments and

must give a reasoned explanation of his findings and conclusions in order to

facilitate meaningful review."  *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424

Fed. Appx. 411, 416 (6th Cir. 2011)).  An ALJ's failure to sufficiently articulate

his Step Three findings is error.  *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d

846, 858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v.

Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in

a series of cases where the ALJ "made only a blanket statement that the claimant

did not meet or equal a Listing section").  For example, in *Andrews v. Comm'r of

Soc. Sec.*, 2013 WL 2200393 (E.D. Mich. May 20, 2013), plaintiff argued that the

ALJ erred in failing to consider whether her cervical and lumbar spine

impairments met or medically equaled Listing 1.04A for "disorders of the spine."

*Id.* at *11.  The ALJ there simply stated "[t]he claimant does not have an

16

impairment or combination of impairments that meets or medically equals one of the listed impairments...." *Id.* The court noted that the ALJ explicitly found that plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

The ALJ here explicitly found that plaintiff suffers from degenerative disc disease with cervical and mild lumbar radiculopathy, but contrary to plaintiff's argument that the ALJ did not analyze the medical evidence as it relates to Listing 1.04A, the undersigned concludes that the ALJ engaged in a comprehensive review. The court will now determine whether substantial evidence supports the ALJ's conclusion that plaintiff's impairments did not meet or medically equal Listing 1.04A.

The ALJ noted that in November 2011, plaintiff underwent a lumbar MRI which showed a lobulated structure in the right neuroforamin at the S2 level and a subsequent December 2011 MRI of plaintiff's lumbar spine which showed only a minimal disc protrusion, without spinal canal stenosis or neuroforaminal narrowing. However, a December 2011 x-ray of plaintiff's cervical spine was normal, and January 2012 x-rays of plaintiff's left ribs was negative. On April 12, 2012, the ALJ noted that plaintiff had an MRI of her shoulder that was consistent with partial thickness tear of the supraspinatus and infraspinatus tendons. Plaintiff

17

received a shoulder injunction and has not received any ongoing treatment for this acute shoulder impairment.

The ALJ further indicated that in December 2012, cervical imaging showed degenerative disk disease at C5-6 and C6-7 with mild spinal stenosis and moderate left neuroforminal narrowing at C5-6.  However, a CT of plaintiff's chest, left rib imagine, a chest x-ray, a mammogram, and a breast ultrasound completed in December 2012 were essentially normal.  In October 2013, plaintiff underwent an MRI of the cervical spine that indicated multilevel discogenic changes but her alignment was stable and she had normal signal in her cervical cord.  Likewise, the ALJ noted that imaging of the plaintiff's thoracic spine showed a stable T11 lesion, an electromyography showed mild lumbosacral radiculopathy, and a bone scan showed small focus uptake at the end of the left first rib, but no increase in the spine.  In March 2014, plaintiff had imaging of the thoracic spine completed, and it was noted that she had a sound focus signal abnormality within T11, segmentation anomaly at T2-3, and a small disc protrusion without spinal canal stenosis.  In September 2014, she had an MRI of the lumbar spine completed and it showed a stable cyst at S2-3, and a disc protrusion at L5-S1, but otherwise the imaging revealed a stable appearance.

In order for plaintiff to meet the criteria of Listing 1.04A, she must show that she has a disorder of the spine with:  "Evidence of nerve root compression

characterized by neuro-anatomic distribution of pain, limitation of motion of the spine (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.   It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec. Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004).  Even if plaintiff cannot demonstrate that she meets the criteria of Listing 1.04A, however, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing.  To do so, she must "present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004).  This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to all the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 874 (6th Cir. 2003).

     In this case, plaintiff points to cervical MRI results that indicate evidence of C5/6 mild disc space narrowing; broad disc herniation, slightly eccentric to the left, abutting/mildly flattening the cord; C6/7 central disc herniation mildly

effacing the cord; and C7/T1 central disc herniation mildly effacing thecal sac. (*Id*. at 478).  She also cites an upper extremity EMG study demonstrating right cervical radiculopathy with denervation approximately in the right C5, C6 nerve root distribution.  (*Id*. at 466-467).  Further, plaintiff indicates that treating physician, Dr. Macy, consistently found limitations in her range of motion and flexion of the cervical spine.  (*Id*. at 434, 451-456, 628-629).

Despite plaintiff's claims that the ALJ did not evaluate the above evidence with respect to Listing 1.04A, the undersigned concludes that the ALJ comprehensively set forth the medical record as it pertains to Listing 1.04A.  The undersigned specifically notes that none of the medical records expressly state that plaintiff suffers from nerve root compression.  To the extent that plaintiff relies on radiating pain, it simply is not sufficient to satisfy the Listing.  *See*, *e.g.*, *Rubin v. Comm'r of Soc. Sec.*, No. 09-11446, 2010 WL 511406, *8 (E.D. Mich. Sept. 8, 2010) (citing *Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634 (S.D. Ohio 2009) (treating physician's opinion that plaintiff met the listing for chronic radiculopathy was insufficient to satisfy the listing where medical records stated that there was no nerve root compression)).  Plaintiff also fails to direct the court to any positive straight leg raising tests in both the sitting and supine positions.  Absent such results, plaintiff cannot meet the Listing.  *See Rubin*, 2010 WL 511406 at *8 (citing *Ayende v. Astrue*, 2009 WL 537221, *7 (E.D. Tenn 2009)).  Finally,

plaintiff does not present any evidence of sensory loss or reflex loss, at least one of which is also required under Listing 1.04A, nor does she point to any evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness)," which is also required under the Listing.  20 C.F.R. Part 404, Subpt. P, App. § 1.04(A).  In sum, plaintiff has not offered the requisite record evidence to support her contention that the ALJ should have found at Step Three that her impairments satisfy the criteria of Listing 1.04A.  *See Roby*, 48 Fed. Appx. at 536 ("The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted).

   2.  Treating Source Rule

   Plaintiff next claims that the ALJ discounted the opinion of her treating physician, Dr. Macy, regarding the disabling nature of her limitations.  An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "non-examining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source").  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).  An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R.

§ 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The

Commissioner may not disregard opinions of a consulting physician which are

favorable to a claimant. *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir.

1983). Moreover, "in weighing medical evidence, 'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings.'"

*Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D.

Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx.

181, 194 (6th Cir. 2009)). An ALJ may not substitute his [or her] own medical

judgment for that of a treating or examining doctor where the opinion of that

doctor is supported by the medical evidence. *See Simpson*, 344 Fed. Appx. at 194;

 *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio

2011) ("An ALJ is not permitted to substitute her own medical judgment for that

of a treating physician and may not make her own independent medical

findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio

2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion

without relying on other medical evidence or authority in the record."). In other

words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony,

or to choose between properly submitted medical opinions, the ALJ cannot

substitute his [or her] own lay 'medical' opinion for that of a treating or examining

doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio

2011).  This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner.  *Allen*, 2013 WL 5676254, at *15.

Plaintiff's primary argument is that the ALJ unreasonably discounted her treating physician's (Dr. Macy) opinion in favor of the opinions of two consulting physicians, Dr. Antoine Geffrard and Dr. Kertia Black.  Plaintiff's treating physician, Dr. Macy, opined that plaintiff could not stand for more than 15 minutes at one time, sit for more than 15 minutes at one time; lift five pounds occasionally and frequently; never bend, stoop or balance; occasionally raise her right and left arm over her shoulder; would need to occasionally elevate her legs; and that she suffers from severe pain.  (Dkt. 13-7, Pg ID 603-604).

With respect to Dr. Macy's opinion regarding plaintiff's limitations, the ALJ concluded:

> ... [p]laintiff needs help with household replacement services.  On October 21, 2013, she opined that the claimant could not even work one hour per day, could only lift five pounds, could never bend, stoop, or balance, could only stand or sit for 15 minutes at a time, and could only occasionally, use her hands for manipulations, or raise her hands over shoulder level.  She also noted that the claimant would need to occasionally elevate her legs during the workday.  In addition, on January 12, 2015, Dr. Macy gave the claimant a note saying that she is unable to work.  The undersigned affords little weight to the opinions of Dr. Macy because they are not consistent with the test results detailed above of the totality of the evidence.

(Dkt. 13-2, Pg ID 63) (internal citations omitted).

The undesigned concludes that the ALJ failed to give the requisite "good reasons" when she discounted the RFC assessment of plaintiff's treating physician, Dr. Macy.  As the Sixth Circuit stated: "This requirement [to always give good reasons] is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).  Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).  As explained in SSR 96-2p, adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to

24

controlling weight not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. Although the ALJ made an effort to review Dr. Macy's treatment records, the undersigned concludes that the ALJ did not offer the necessary illumination as to why she discounted Dr. Macy's opinion. Even if Dr. Macy's opinion was not entitled to controlling weight, it was entitled to deference in view of the longitudinal medical record. 20 C.F.R. § 404.1527(d)(2)(I). Accordingly, proper evaluation of Dr. Macy's opinion necessitates remand.

Additionally, the undersigned is troubled that the Commissioner repeatedly points to the opinion of state agency reviewing physician Dr. Sonia Ramirez-Jacobs, as supporting the ALJ's ultimate RFC. (Dkt. 13-3, Pg ID 139-145). The Commissioner specifically argues that Dr. Ramirez-Jacobs' opinion can outweigh a treating physician's opinion where, as here, the reviewing physician opinion is "supported by evidence in the case record." (*Id*.; citing *Helm v. Comm'r of Soc. Sec. Admin*., 405 Fed. Appx. 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p 1996 WL 374180, at *2)). However, the ALJ specifically determined that Dr. Ramirez-Jacob's opinion was rendered by a "single decision maker; [and] as such, it is not

afforded any weight." (Dkt. 13-2, Pg ID 65). Under these circumstances, a related problem in this case is the ALJ's RFC determination. Here, the ALJ discounted the opinion of plaintiff's treating physician regarding plaintiff's functional limitations and, as noted above, the only additional physical RFC assessment of plaintiff is by the single decision maker. The ALJ, therefore, apparently arrived at his RFC based on his own analysis of the medical evidence in the record.

Importantly, as noted before, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings," in weighing the medical evidence. *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id.* (internal quotations omitted). As noted earlier, the ALJ may resolve issues of credibility as to lay testimony, or choose between properly submitted medical opinions, but she is prohibited from substituting her own lay 'medical' opinion for that of a treating or examining doctor. *Beck*, 2011 WL 3584468, at *14.

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's

26

RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  Since the ALJ rejected Dr. Macy's opinions concerning plaintiff's RFC, and is precluded from relying on the single decision maker's opinion which she cited for support, the ALJ is left with only her own lay opinion as to the medical support for her RFC finding.  This method of determining the RFC is impermissible.

Although ultimately a finding of no disability may be appropriate in this

case, substantial evidence does not exist on the record to support the current RFC

determination because there is no RFC determination by a consulting physician or

expert medical advisor.  Thus, as stated, the ALJ's RFC determination (at least in

part) was not based on any medical opinion, but instead was apparently formulated

in reliance on her own independent medical findings.  Under these circumstances,

a remand would be necessary to obtain a proper medical source opinion regarding

plaintiff's physical impairments.  Thus, the undersigned suggests that if, on

remand, the ALJ articulates good reason for refusing to afford controlling weight,

or any weight to the opinion of the treating physician (Dr. Macy), a proper medical

source opinion regarding plaintiff's physical impairments will need to be obtained

to develop a valid RFC.

## IV.    RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED IN PART AND**

**DENIED IN PART**, that defendant's motion for summary judgment be

**GRANTED IN PART AND DENIED IN PART**, and that the findings of the

Commissioner be **REVERSED IN PART AND REMANDED** for proceedings in

accordance with this report and recommendation.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs*., 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 31, 2017                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 31, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov